USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/30/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
:
PATRICIA ROYSTON, as successor :
Trustee of the Alan D. Bleznak :
2005 Life Insurance Trust, :
:
               Plaintiff, :
    v. :   08 Civ. 8715 (BSJ)
: **Order**
WELLS FARGO BANK, N.A., LANCIER :
GROUP, LLC, and ALSTON & BIRD, LLP, :
:
             Defendants. :
:
----------------------------------- X

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff, Patricia Royston as successor Trustee of the Alan Bleznak 2005 Life Insurance Trust ("Plaintiff"), moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) on the third and fourth counts of the Second Amended Complaint, which assert claims against Defendant, Lancier Group, LLC ("Lancier"), for conversion and restitution. Defendant cross-moves for summary judgment on those claims as well as on the fifth and sixth counts, which assert claims for breach of contract and constructive trust. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED and the Cross-Motion for Summary Judgment is GRANTED in part and DENIED in part.

**BACKGROUND**

1

The facts underlying the instant motions were set out in detail both in this Court's August 25, 2009 order granting Defendants' motions to dismiss the Amended Complaint as well as in the Court's March 10, 2011 order granting in part and denying in part Defendants' motions to dismiss.[1]  As described in those orders, Plaintiff alleged that this case arises out of a scheme initiated by XE-R New York, LLC ("XE-R") to procure a beneficial ownership in life insurance policies on the lives of strangers.  (Second Am. Compl., ¶ 8.)  This alleged scheme required the insured to form a life insurance trust.  (Second Am. Compl., ¶ 8.)

The claims before the Court concern the life insurance trust ("Trust") formed for Alan D. Bleznak ("Bleznak" or the "Settlor"), who agreed to purchase five life insurance policies with a cumulative value of forty-five million dollars.  (Second Am. Compl. ¶ 11.)  To finance the purchase of the Policies, XE-R loaned the Trust over $2.5 million on a non-recourse basis, with the Policies serving as collateral on the loan.[2]  That transaction was memorialized in various related contracts, including two Life Insurance Services Agreements ("Services Agreements") and various "Funding Agreements."  (Second Am. Compl., ¶¶ 26-29 & Ex. B.)

---

[1] The Court granted Alston & Bird's motion to dismiss and Plaintiff voluntarily dismissed Wells Fargo.
[2] Pursuant to the transaction agreements, XE-R was to pay the premiums on the policies directly to the insurers.  (Second Am. Compl., ¶ 28.)

The Services Agreements designated XE-R as the exclusive broker for the sale of the policies and, if the Trust chose to sell the Policies within five years of the transaction, the Trust agreed to pay XE-R brokerage commissions. The Services Agreements also obligated XE-R to perform other "Non-Broker" services (or administrative duties) for the Trust. (Second Am. Compl., ¶ 31 & Ex. B.) Shortly after the transaction closed, XE-R assigned the loans and its interests in the Services Agreements to an affiliate, Platform XE-R, LLC ("Platform"). (Plaintiff's Rule 56.1 Statement, ¶ 6.)

On August 20, 2007, the Bank of New York Trust Company, N.A., acting as Collateral Agent for one of Platform's lenders, foreclosed on certain loans to Platform, pursuant to § 9-610 of the Uniform Commercial Code ("U.C.C."). (Second Am. Compl., ¶ 7.) The Collateral Agent sold the collateral that Platform had pledged to its lender to Lancier. According to the "Transfer Statement" effecting the sale, the collateral included the "life insurance funding agreements, life insurance services agreements, related non-recourse promissory notes and other related documents." (Second Am. Compl., ¶ 7.) The Transfer Statement provided that Lancier acquired all of Platform's "rights, interests, powers and privileges in and to" all of the collateral which, again, purported to include the Services Agreements. (Fuller Decl., Ex. A.)

3

In a November 8, 2007 letter, Lancier notified the Trust that it had acquired Platform's assets and was assuming its obligations related to the Services and Funding Agreements. The letter stated: "For the avoidance of doubt, Lancier is therefore the 'Holder' under the Funding Agreement and Note, and 'Servicer' under the Services Agreement." (Fuller Decl., Ex. C, at 3.) Neither Plaintiff nor Bleznak disputed that Lancier had replaced Platform as Servicer of the Policies and, as such, was the exclusive provider of broker and non-broker services as described in the Services Agreement. (Lancier's Rule 56.1 Statement, ¶ 18.)

In December 2007, former Successor Trustee of the Trust, Meridian Trust Company Limited ("Meridian"), elected to sell the life insurance policies. (Second Am. Compl., ¶ 46.) Though Lancier marketed the Policies to potential purchasers, a third-party broker retained by Bleznak and the Trust ultimately brokered the sale of the policies. (Lancier's Rule 56.1 Statement, ¶¶ 30-31.) Lancier was paid the premium and interest due on the loans. (Id. ¶ 33.) Before releasing its liens on the Policies, Lancier also demanded, and was paid, $1,865,596.57 in commissions and fees. (Second Am. Compl., ¶ 47.)

Plaintiff now claims that Lancier was not entitled to the $1.8 million in commissions because, as a matter of law, it

4

never acquired a security interest in the Services Agreements[3] and is therefore liable for conversion and should be made to pay restitution. Lancier opposes those arguments and further contends that it is entitled to summary judgment on Plaintiff's claims for breach of contract and constructive trust.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Cloverleaf Realty, Inc. v. Town of Wawayanda, 423 Fed. Appx. 61, 62 (2d Cir. 2011). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).

## DISCUSSION

---

[3] In Plaintiff's previous motion to dismiss, she alleged that the Services Agreements were invalid or illegal for a variety of reasons. Though the Court found that the Agreements were not illegal under New York State Law, it found that Plaintiff had alleged sufficient facts to sustain a claim that the Agreements entered into were unauthorized and unconscionable, and that the services to be performed under those agreements were illusory. In her present motion for summary judgment, Plaintiff appears to have abandoned these theories in favor it of its current theory that there was no valid transfer of a security interest in the Services Agreements from Platform to Lancier.

5

1. **Claims against Lancier for Conversion, Restitution, and Constructive Trust**

Plaintiff claims that Lancier did not acquire the Securities Agreements (including the attendant rights to broker commissions and fees) in the collateral transfer because, essentially, the Securities Agreements could not serve as collateral under the U.C.C.

Plaintiff contends that Article 9 of the U.C.C., which governs secured transactions, does not apply to the Services Agreements. Plaintiff points out that the U.C.C. is inapplicable to "an assignment of a right to payment under a contract to an assignee that is also obligated to perform under the contract." N.Y. U.C.C. § 9-109(d)(6) (2001). Here, because the Services Agreements required the performance of brokerage services, Plaintiff argues that the parties could not have created a security interest in them and, therefore, the Services Agreements were not collateral securing Platform's obligations to its creditors. For that reason, Plaintiff claims that the Collateral Agent had no power to transfer the Services Agreements to Lancier, meaning that Lancier did not acquire "title" to them by purchasing Platform's assets.

The Court is inclined to agree with Plaintiff on this score: per the express language of the U.C.C., agreements such as the one before us, which condition a right to payment on the

performance of a contractual obligation, fall outside the scope of Article 9.[4] Therefore, as Plaintiff argues, the Transfer Statement did not transfer title or "ownership" to the Services Agreements.[5] (Plaintiff Reply at 2-4.)

However, even if the Services Agreements were not collateral under Article 9, they were still contracts obligating Platform (or its assignee) to perform broker and non-broker services for the Trust, and obligating the Trust to pay commissions and/or fees in consideration for those services. As such, even if the Services Agreements were not transferred to Lancier as "collateral," there is no reason why the rights and duties of those Agreements could not have been voluntary assigned (by Platform) and assumed (by Lancier). The record evidence demonstrates as much.

As a general matter, there is no dispute that the Services Agreements were assignable. They provide: "nothing in this Agreement . . . should be deemed or interpreted or construed to prevent Servicer from assigning or transferring . . . this

---

[4] The Court is not convinced by Lancier's argument that parties may contract around the U.C.C. with respect to the fundamental definition of a security interest. See U.C.C. § 1-302 cmt. 1 (stating that the meaning of the statute, including its definitions, cannot be varied by agreement). Even if they could, Lancier has not submitted any concrete evidence suggesting that the parties intended to do so.

[5] Plaintiff additionally argues that the Services Agreements could not constitute collateral securing Platform's debt because there is no evidence of a security agreement naming the Services Agreements as collateral. The evidence is to the contrary. Lancier has produced the Transfer Statement, which defines the Services Agreements as Collateral. Plaintiff has not adduced proof contradicting that document. Regardless, this point is immaterial to the Court's analysis.

Agreement, or any of its rights, duties or obligations thereunder or hereunder; provided, however, that, (i) as to any assignment or transfer of this Agreement or Servicer's rights, duties or obligations . . . the party to whom Servicer is assigning or transferring this Agreement . . . assumes all, or the relevant portion of, Servicer's obligations hereunder . . . ." (Second Am. Compl., Ex. B., § 14.3.)

Contrary to Plaintiff's contention, there is ample evidence that Lancier assumed the contractual obligations of the Services Agreements.[6]  Until the commencement of this lawsuit in October 2008, neither party disputed that, after the collateral sale, Lancier 'stepped into' Platform's shoes to act as the "exclusive provider" of broker services. (Fuller Decl., ¶ 6.) As noted, in a November 2007 letter to Plaintiff, Lancier confirmed that it would act as "Servicer" of the Policies under the Services Agreements. Plaintiff did not object or otherwise question that assertion. (Fuller Decl., Ex. C.)

Lancier then performed, and Plaintiff accepted, those services. When the time came to sell the Policies, Lancier's General Counsel, Lisa Fuller, sent a memorandum on December 12,

---

[6] The Court is not persuaded by Plaintiff's attempt to prove that Lancier affirmatively rejected the obligations of the contract by citing to a footnote in Lancier's previous motion to dismiss in which it states that it did not acquire XE-R's liabilities for breaches of contract. That statement is neither a concession nor evidence in support of Plaintiff's claim here: at most, it is a statement asserting that Lancier did not assume responsibility for its predecessor's breaches of contract (if any), which is distinct from whatever obligations it may have assumed in connection with the Services Agreements contract.

8

2007 to the Trust and Bleznak's attorney noting that Lancier was updating the underwriting files and marketing the Policies. Plaintiff affirmatively thanked Lancier for the helpful information. (Fuller Decl, ¶¶ 9-10.) Lancier then marketed the Policies, advised Plaintiff's representatives concerning the Policies' structure, and dealt with other information needed to facilitate their sale. (Fuller Decl., ¶¶ 12-13; Jacobsen Decl., ¶¶ 2, 6.) Plaintiff's contention that Lancier somehow duped Plaintiff into accepting its services by misrepresenting that Lancier owned title to the Services Agreements is conclusory, unsupported by any evidence, and is, in any event, irrelevant to the question of whether a contract existed between the parties. Again, it is immaterial whether the parties erroneously believed that the Services Agreements were some form of collateral capable of ownership; those agreements were, at base, contracts, whose rights and duties were assigned by Platform to Lancier. Thus, having demonstrated that it assumed and performed the obligations of the Services Agreements, Lancier has demonstrated that it was also entitled to the rights and privileges of those contracts, including the right to be paid commissions and fees in consideration for the agreed upon broker and non-broker services.

Because the Court concludes that Lancier was contractually entitled to the commissions paid to it under the terms of the

9

Services Agreements, it finds that Lancier is not liable for converting those funds. See Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993) (no conversion as a matter of law where defendant has rightful control of property by virtue of a contract). For that reason, restitution of those funds is not warranted. Likewise, there is no basis for a constructive trust, which is a remedy that relies on the conversion claim. See In re Minpeco, USA, Inc., 237 B.R. 12, 31 (S.D.N.Y. Bankr. 1997). Accordingly, the Court denies summary judgment for Plaintiff on Counts three, four, and six of the Second Amended Complaint and grants summary judgment in favor of Lancier on those claims.

### 2. Plaintiff's Claims for Breach of Contract

Having determined that the Services Agreements constituted a valid contract between Plaintiff and Lancier, the Court now considers whether Lancier breached the terms of that contract. Plaintiff alleges that Lancier breached its obligations under the Services Agreements by "failing to timely arrange for the payment of all premiums on the John Hancock policy # UL1202752" (the "Hancock Policy"), which required a reinstatement of the Hancock policy that delayed the sale of the Policies. (Second Am. Compl., ¶¶ 83-84.) As a result of that alleged delay, Plaintiff alleges approximately $1.3 million in damages. (Second Am. Compl., ¶ 84.) Plaintiff additionally claims that

10

Lancier failed to have the Hancock Policy issued in the correct $10 million amount. (Plaintiff's Opp. at 4-5.)

With respect to the policy amount, the uncontroverted evidence demonstrates that the policy issued in the wrong amount due to a mistake by the insurance carrier, not Lancier. (Fuller Decl., ¶ 15 & Ex. I.) Accordingly, Lancier did not breach the contract in that regard.

However, there is evidence suggesting that Lancier did not pay an October 2007 premium on time. (Fuller Decl., Ex. I; Bleznak Decl., ¶ 3.) Whether Lancier was required to pay that premium, whether its failure to do so, if any, caused a delay in the sale of the Hancock Policy, and the extent to which the delay, if any, damaged Plaintiff, remain triable issues of fact that preclude summary judgment in Lancier's favor on Count 5 of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and Lancier's cross-motion for summary judgment is granted in part and denied in part.

The clerk of the Court is directed to terminate motions at docket numbers 111 and 118.

**SO ORDERED:**

_____
Barbara S. Jones
**UNITED STATES DISTRICT JUDGE**

New York, New York
January 30, 2012